913 F.2d 1233
 59 USLW 2201, 23 Collier Bankr.Cas.2d 1275,
20 Bankr.Ct.Dec. 1669, Bankr. L. Rep. P 73,624
 DIAMOND MORTGAGE CORPORATION OF ILLINOIS,
Debtor-in-Possession and A.J. Obie & Associates,
Incorporated, Debtor-in-Possession,
Plaintiffs-Appellants,
v.
Peter SUGAR, David D. Warner, Jaffe, Snider, Raitt & Heuer,
P.C., Ronald M. Barron, Ronald M. Barron and Associates,
P.C., Barron & Knoppow, P.C., Barron & Linden, P.C., Barron,
Linden & Fagan, P.C., and Ronald M. Barron, P.C.,
Defendants-Appellees.
 Nos. 89-2804 & 89-3003.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 5, 1990.
Decided Sept. 21, 1990.
Rehearing and Rehearing En Banc
Denied Nov. 21, 1990.
 
 Ronald R. Peterson, C. Steven Tomashefsky, Russ M. Strobel, Jenner & Block, Chicago, Ill., for plaintiffs-appellants.
 Francis D. Morrissey, Stephen R. Ayres, Baker & McKenzie, John T. Wardrope, Purcell & Wardrope, Chicago, Ill., Morton Collins, Noreen L. Slank, Collins, Einhorn & Farrell, Southfield, Mich., Thomas J. Tallerico, Jaffe, Snider, Raitt & Heuer, Detroit, Mich., Robert J. Riley, Bruce M. Bieneman, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for defendants-appellees.
 Before WOOD, Jr., CUDAHY and POSNER, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Jurisdictional questions can be thorny, particularly when their resolution depends upon the application of different sets of procedural rules. The paramount question presented in this case is whether, in "non-core" bankruptcy proceedings involving disputed questions of state law, federal district courts should consult the Bankruptcy Rules or state long-arm statutes in determining if they may exercise personal jurisdiction over defendants.
 
 I.
 
 2
 Diamond Mortgage Corporation of Illinois ("Diamond"), a mortgage banker licensed and incorporated in Illinois, originated mortgage loans to Illinois borrowers. Diamond sold these loans to Illinois investors through its sister corporation, A.J. Obie & Associates, Inc. ("Obie"), which was also licensed and incorporated in Illinois. Diamond and Obie filed Chapter 11 bankruptcy petitions in August 1986, and their cases currently are pending before the United States Bankruptcy Court for the Northern District of Illinois. The combined total insolvency of Diamond and Obie is approximately $11.5 million.
 
 
 3
 From 1981 through 1986, two sets of attorneys represented Diamond and Obie at various times. The first set, the Barron Attorneys,[1] a Michigan attorney and five Michigan law firms of which he was the principal, served as general counsel for Diamond and Obie. The Barron Attorneys' responsibilities included drafting closing documents, reviewing questions of Illinois law, revising disclosure forms and examining offering circulars. To perform these duties, the Barron Attorneys traveled to Chicago, placed business phone calls and sent business letters to Diamond and Obie in Illinois. Similar duties were performed by the Jaffe Attorneys,[2] also citizens of Michigan, who served primarily as securities counsel for Diamond and Obie, and who reviewed, drafted and revised documents for them. The Jaffe Attorneys also traveled to Illinois, placed business phone calls and sent business letters to Diamond and Obie. Each set of attorneys characterizes its contacts with Illinois as minimal.
 
 
 4
 Diamond and Obie charge that the Barron Attorneys and the Jaffe Attorneys committed legal malpractice and breached their fiduciary duties in representing them in the following respects:
 
 
 5
 (1) they simultaneously represented several corporations that were engaged in transactions with Diamond and Obie; (2) they failed properly to advise Diamond and Obie as to the conflict of interest created by that simultaneous representation; (3) they failed to withdraw from their conflicting representation when they should have done so; and (4) they failed properly to advise Diamond and Obie regarding Diamond's and Obie's fundamentally unsafe and unsound business practices.
 
 
 6
 Appellants' Brief at 10. The lower court never reached the substance of these claims, however. After Diamond and Obie leveled these charges in their complaint, the Barron and Jaffe Attorneys filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. They claimed that they were neither citizens nor residents of Illinois and that the legal services they rendered had been performed in Michigan; thus, they asserted that the district court could not exercise its jurisdiction over their persons. Naturally, Diamond and Obie disagreed, maintaining that their former attorneys were amenable to nationwide service of process pursuant to Bankruptcy Rule 7004(d) and, in the alternative, that the attorneys had established sufficient minimum contacts with Illinois to justify the exercise of federal jurisdiction through the Illinois long-arm statute.
 
 
 7
 Pursuant to 28 U.S.C.A. section 636(b)(1) (West Supp.1990), the district court referred the matter to Magistrate James T. Balog, who recommended that the suit be dismissed for lack of personal jurisdiction. Magistrate Balog reasoned that "the procedures prescribed in Part VII [of the Bankruptcy Rules] apply only to adversary proceedings brought in a bankruptcy court. While the instant case may stem from a bankruptcy proceeding, it is a legal malpractice action brought in Federal district court. As such, [the nationwide service of process provision of] Bankruptcy Rule 7004(d) is inapplicable." Report & Recommendation at 2 (N.D.Ill. May 19, 1989). Further, he concluded that the Jaffe and Barron Attorneys had not established minimum contacts sufficient to justify the exercise of federal jurisdiction under the Illinois long-arm statute. Hence, he recommended that the district court grant the attorneys' motions to dismiss for lack of personal jurisdiction. The district court adopted the Report & Recommendation, conceding nonetheless that Diamond and Obie's position on nationwide service of process had "superficial logic." Order at 2 (N.D.Ill. July 19, 1989).
 
 
 8
 As a result of the district court's decision, Diamond and Obie filed a motion for reconsideration and clarification; they charged, among other things, that the district judge and magistrate had relied upon a superseded version of the Bankruptcy Rules (and cases decided under this version) to reach their conclusions. While acknowledging that the newly amended Bankruptcy Rules substantially undermined the magistrate's analysis, the district court denied the motion, reasoning that the Bankruptcy Rules--and particularly Rule 7004(d)--apply only to "core" proceedings under the Bankruptcy Code. Diamond and Obie filed a timely notice of appeal. Since we believe that the district court may exercise its jurisdiction over the Barron and Jaffe Attorneys' persons, we reverse and remand.
 
 II.
 
 9
 Whether the Federal Rules of Civil Procedure or the Bankruptcy Rules should be applied in this proceeding is implicated, in large measure, by fundamental changes in the entire structure of the bankruptcy system. A brief review of these changes--which have occurred over the last century--is necessary before we turn to the problem immediately at hand.
 
 
 10
 The present bankruptcy structure is the culmination of substantial congressional amendment to the federal bankruptcy laws in response to recent Supreme Court decisions. Until 1978, federal district courts acted as bankruptcy courts, but often referred cases to "referees" (later designated "judges") who could issue final orders directly appealable to the district court. A referee's jurisdiction extended only as far as the district in which the district court was located. See, e.g., 2A Collier on Bankruptcy p 38.02 (14th ed. 1978).
 
 
 11
 Dissatisfaction with the dual role of bankruptcy referees--who wielded tremendous power to decide cases while retaining extensive supervisory responsibility to conduct the continuing administration of the bankruptcies--was, among other factors, the reason Congress embarked upon a comprehensive examination of the bankruptcy laws. G. Treister, J. Trost, L. Forman, K. Klee & R. Levin, Fundamentals of Bankruptcy Law Sec. 1.01 (2d ed. 1988). At the conclusion of this study, Congress enacted the Bankruptcy Act of 1978, which eliminated the referee system and established, in its place, "in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district." 28 U.S.C. Sec. 151(a) (Supp. II 1978). "Adjuncts" in name alone, these new bankruptcy courts operated virtually independent of the district courts. Despite their status as Article I judges, these bankruptcy judges were authorized by Congress to hear proceedings "arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. Sec. 1471(b), (c) (Supp. II 1978) (emphasis supplied). As such, they could hear claims based upon federal and state law.
 
 
 12
 The Bankruptcy Act of 1978, however, was short-lived; in 1982, the Supreme Court decided Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Court invalidated Congress's grant of jurisdiction to the bankruptcy courts. Justice Brennan, writing for a plurality of four Justices, concluded that the Bankruptcy Act's sweeping grant of jurisdiction to bankruptcy judges (who served without Article III salary and tenure protections)--including the power to decide matters "related to those arising under the bankruptcy laws"--violated the provisions of Article III of the Constitution. Marathon, 458 U.S. at 76, 102 S.Ct. at 2874 (plurality). Further, a majority of the Court refused to confine its strictures to that portion of the jurisdictional grant that violated Article III--an approach that would have left the bankruptcy courts free to hear "core"[3] proceedings:[W]e cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. See H.R.Rep. No. 95-595, pp. 43-48 (1977); S.Rep. No. 95-989, p. 17 (1978).
 
 
 13
 Marathon, 458 U.S. at 87 n. 40, 102 S.Ct. at 2880 n. 40 (plurality); see id. at 91-92, 102 S.Ct. at 2881-82 (Rehnquist, J., concurring) ("Because I agree with the plurality that this grant of authority is not readily severable from the remaining grant of authority to bankruptcy courts under Sec. 1471 ... I concur in the judgment.").
 
 
 14
 Congress responded slowly to Marathon, despite the Court's decision to stay its judgment twice. Finally, when the second stay expired six months after the Court announced its decision and Congress still had failed to act, federal district courts across the nation adopted almost identical versions of an Emergency Jurisdictional Rule (recommended by the Judicial Conference of the United States) as an interim measure to preserve the bankruptcy courts until Congress enacted remedial legislation. See In re Wildman, 30 B.R. 133, 138 (Bankr.N.D.Ill.1983). Under the Emergency Jurisdictional Rule, Article III district judges exercised the entire scope of bankruptcy jurisdiction, but were authorized to refer most bankruptcy cases to bankruptcy judges for final resolution, subject to appeal. However, bankruptcy judges could not, without the parties' specific consent, render final decisions in "related proceedings" like that of the Marathon debtor who asserted an independent cause of action against a third party who was not a bankruptcy claimant. Further, district judges could withdraw their reference to the bankruptcy courts at any time.
 
 
 15
 Finally, in July 1984, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 ("BAFJA"), which, in many respects, codified the approach taken by the Judicial Conference in the Emergency Jurisdictional Rule. Again, jurisdiction would be exercised in the first instance by Article III district judges, who could then refer bankruptcy cases to bankruptcy courts. Bankruptcy courts, however, would not be independent of Article III courts; rather, they would serve as an arm of those courts. See 28 U.S.C.A. Sec. 151 (West Supp.1990) ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."). District judges could refer almost any matter to the bankruptcy courts, either by specific or blanket referral. See 28 U.S.C.A. Sec. 157 (West Supp.1990) (outlining procedures for referral); General Rule 2.33(a) of the United States District Court for the Northern District of Illinois (providing blanket referral). Once the case was referred, the bankruptcy judge could enter final orders in core proceedings but, absent the parties' consent, could, in non-core proceedings, only make recommendations to the district judge, which would then be subject to de novo review by the district court. 28 U.S.C.A. Sec. 157(c) (West Supp.1990). As a practical matter, "the bankruptcy judge sits as a judge in core proceedings. In noncore proceedings, however, the bankruptcy judge functions as a magistrate or special master." 1 R. Ginsberg, Bankruptcy Sec. 1.03[a] (2d ed. 1989). Still, original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," would rest with the district court. 28 U.S.C.A. Sec. 1334(b) (West Supp.1990).
 
 III.
 
 16
 All of this background is irrelevant, however, if Diamond and Obie's claim does not invoke the district court's bankruptcy jurisdiction. Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." There is little question that Diamond and Obie's malpractice and breach of fiduciary duty suit does not arise under Title 11. The suit clearly does not satisfy the test for determining whether a suit is a core proceeding, arising under Title 11, as recently adopted by this circuit:
 
 
 17
 "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."
 
 
 18
 Barnett v. Stern, 909 F.2d 973, 981 (7th Cir.1990) (quoting In re Wood, 825 F.2d 90, 97 (5th Cir.1987)); see also In re GEX Ky., Inc., 85 B.R. 431, 433 (Bankr.N.D.Ohio 1987) (explaining "arising under" jurisdiction).
 
 
 19
 The parties, however, dispute the extent to which the suit is related to Diamond and Obie's underlying bankruptcy cases. See Appellants' Brief at 15-16; Jaffe Attorneys' Brief at 13. We believe that this action is related to the underlying bankruptcy cases, for its resolution may have a direct and substantial impact on the asset pool available for distribution to the estates. See Home Ins. Co. v. Cooper & Cooper, Ltd., 889 F.2d 746, 749 (7th Cir.1989); In re Xonics, 813 F.2d 127, 131 (7th Cir.1987) (both defining "related to" within the context of 28 U.S.C.A. Sec. 157(c) (West Supp.1990)); cf. Barnett, 909 F.2d at 981; G. Treister, J. Trost, L. Forman, K. Klee & R. Levin, Fundamentals of Bankruptcy Law Sec. 2.01(c)(2) (2d ed. 1988) (except at outer reaches, "there should be no legitimate question about the legislative intent to vest the court with a complete, or pervasive, jurisdiction over all matters that have to do with a bankruptcy case or that have any significant bearing upon it."). And despite the Barron and Jaffe Attorneys' repeated claims at oral argument that this was simply a diversity case, Diamond and Obie did base their claim, at least in part, on the district court's bankruptcy jurisdiction. See Complaint at p 2 ("Jurisdiction is based upon 28 U.S.C. Secs. 1332(a)(1) and 1334(b). This action is a non-core matter related to In re Diamond Mortgage Corporation of Illinois, No. 86 B 13066 and In re A.J. Obie & Associates, Inc., No. 86 B 13067, both pending before the United States Bankruptcy Court for the Northern District of Illinois.").[4] We conclude, therefore, that Diamond and Obie's complaint is related to their underlying bankruptcy cases, and that the district court could have exercised its bankruptcy subject matter jurisdiction over the claim.
 
 IV.
 
 20
 Both the Bankruptcy Rules and the Federal Rules of Civil Procedure contain provisions regulating procedure in bankruptcy proceedings. While the procedures in these two sets of rules are, in many respects, similar, occasional differences arise. We turn now to the relationship between these rules in an effort to determine which set applies to this case.
 
 
 21
 A. The Relationship Between the Federal Rules of Civil Procedure and the Bankruptcy Rules
 
 
 22
 The Federal Rules of Civil Procedure "govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81." Fed.R.Civ.P. 1. Among these exceptions are bankruptcy proceedings: "These rules do not apply ... to proceedings in bankruptcy ... except in so far as they may be made applicable thereto by rules promulgated by Supreme Court of the United States." Fed.R.Civ.P. 81(a)(1). At first blush, this rule appears to suggest that the Federal Rules of Civil Procedure do not apply to bankruptcy-related proceedings, and that Diamond and Obie's claim--which is related to a bankruptcy case--is therefore not governed by these rules. Rule 81(a)(1), however, is not dispositive on this point: when Rule 81 was promulgated, the phrase "proceedings in bankruptcy" referred only to those matters arising directly from the substantive provisions of bankruptcy law (summary matters), not to related matters (plenary matters). Windsor Communications Group, Inc. v. Grant, 75 B.R. 713, 728-29 (E.D.Pa.1985). At the time these civil rules were last amended, plenary matters could not be brought in federal district court unless some independent basis of jurisdiction could be established, in which case the district court would apply its own Federal Rules of Civil Procedure. See Chatz v. Freeman, 204 F.2d 764 (7th Cir.1953). Accordingly, these plenary matters were, by definition, not "proceedings in bankruptcy" under Rule 81. Windsor Communications Group, 75 B.R. at 729.
 
 
 23
 In the Bankruptcy Act of 1978, however, Congress eliminated the distinction between summary and plenary matters and established new bankruptcy courts exercising jurisdiction over all "civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. Sec. 1471(b) (Supp. II 1978) (emphasis supplied). Since that time, as we have discussed, district courts have been authorized to consider cases based upon federal bankruptcy law or claims related to such cases. Hence, while the term "proceedings in bankruptcy" within the context of Rule 81(a)(1) may have had great relevance within the bankruptcy system as it existed before 1978, the massive overhaul of this system substantially undermines any attempt to rely upon this term in resolving our question. Windsor Communications Group, 75 B.R. at 732; see In re Merritt Logan, Inc., 109 B.R. 140, 145-46 (Bankr.E.D.Pa.1990). It is simply unclear, within the context of our present bankruptcy system, whether the term "proceedings in bankruptcy" should be interpreted to include all bankruptcy matters or only those directly based upon the Bankruptcy Code.[5] To resolve this question, we must look elsewhere.
 
 
 24
 B. The Scope and Application of the Bankruptcy Rules: In Which Courts Do They Apply?
 
 
 25
 Bankruptcy Rule 1001 provides that the Bankruptcy Rules "govern procedure in cases under title 11 of the United States Code."[6] No reference here is made limiting application of the Bankruptcy Rules to bankruptcy courts; indeed, the Advisory Committee explained that "[t]his amended Bankruptcy Rule 1001 makes the Bankruptcy Rules applicable to cases and proceedings under title 11, whether before the district judges or the bankruptcy judges of the district." Bankruptcy Rule 1001 advisory committee's notes to 1987 amendment. Cf. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946) ("The fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency. But in ascertaining their meaning the construction given to them by the Committee is of weight.").
 
 
 26
 Such an explanation--and the plain language of the Rule--lies in stark contrast to the previous version of Bankruptcy Rule 1001, which specifically limited application of the Bankruptcy Rules to the bankruptcy courts: "The Bankruptcy Rules and Forms govern procedure in United States Bankruptcy Courts in cases under chapters 7, 9, 11, and 13 of title 11 of the United States Code." Bankruptcy Rule 1001 (1986) (emphasis supplied). The excision of the phrase "in United States Bankruptcy Courts" from the present version of the Bankruptcy Rules reflects the extension of the district courts' bankruptcy jurisdiction after the enactment of BAFJA. See Letter of Hon. Morey L. Sear, Chairman of the Advisory Committee on Bankruptcy Rules, to Hon. Edward T. Gignoux, Chairman of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (reprinted in Bankruptcy Rules at 5 (Collier Pamphlet ed. 1989)) ("As a consequence of the 1984 Amendments to the Bankruptcy and Judicial Codes, it is necessary to amend the 1983 Bankruptcy Rules to provide rules of practice and procedure applicable to district judges when sitting in bankruptcy and to bankruptcy courts when exercising the district court's jurisdiction."). It is clear, therefore, that both the district courts and the bankruptcy courts may apply the Bankruptcy Rules in appropriate cases.
 
 
 27
 If a court determines that application of the Bankruptcy Rules is appropriate, it must determine the proper procedures to be followed in the case. Part VII of the Bankruptcy Rules provides the procedural rules for "adversary proceedings," which are defined, in part, as proceedings "to recover money or property...." Bankruptcy Rule 7001.[7] This rule, like Bankruptcy Rule 1001, was amended in 1987 to comport with BAFJA's jurisdictional overhaul of the bankruptcy system. Prior to 1987, Rule 7001 described adversary proceedings as proceedings "in a bankruptcy court (1) to recover money or property...." Bankruptcy Rule 7001 (1986) (emphasis supplied). The current version of Rule 7001 eliminated this requirement; the rules of Part VII, then, apply to all adversary proceedings, whether they transpire in bankruptcy or in district court.
 
 
 28
 There can be little question that Diamond and Obie's claim against the Barron and Jaffe Attorneys can be characterized as an "adversary proceeding" within the literal terms of Rule 7001. Diamond and Obie charge, essentially, that the Barron and Jaffe Attorneys' malpractice led to substantial losses and eventual bankruptcy. Presumably, Diamond and Obie now seek to recoup these losses. Such an action can be described as "a proceeding ... to recover money or property...." and does not fit any of the exceptions to Bankruptcy Rule 7001. The procedural rules of Part VII, therefore, apply to bankruptcy proceedings like this without regard to judicial forum.[8]
 
 
 29
 Despite this analysis, the Barron and Jaffe Attorneys maintain that, regardless of BAFJA and the amendments to the Bankruptcy Rules, district judges may not invoke the Bankruptcy Rules in their courts. They assert, first, that "the Bankruptcy Rules apply only to cases commenced in bankruptcy court." Jaffe Attorneys' Brief at 9. Indeed, they draw some support for this assertion from Magistrate Balog's Report & Recommendation, which concludes:
 
 
 30
 Under Rule 7001, the procedures prescribed in Part VII apply only to adversary proceedings brought in a bankruptcy court. While the instant case may stem from a bankruptcy proceeding, it is a legal malpractice action brought in Federal district court. As such, Bankruptcy Rule 7004(d) is inapplicable.
 
 
 31
 Report & Recommendation at 2.
 
 
 32
 In reaching this conclusion, the magistrate may have relied upon a superceded version of Rule 7001, which, as we mentioned previously, expressly limited application of the Part VII procedural rules to proceedings transpiring "in a bankruptcy court." The present version of Rule 7001 contains no such limitation. Further, the magistrate's conclusion ignores the jurisdictional upheaval created by Marathon, the Emergency Jurisdictional Rule and BAFJA: adopting the magistrate's frame of reference, litigants simply cannot "bring" a case in bankruptcy court, for bankruptcy judges do not exercise Article III authority. Instead, litigants must commence their cases in the district court, at which time that court may refer these cases to the bankruptcy court by specific or blanket referral. Bankruptcy judges, as mere "unit[s] of the district court[s]," simply do not exercise any original jurisdiction in the new bankruptcy scheme, 28 U.S.C.A. Secs. 151, 1334 (West Supp.1990); hence, a case cannot, by definition, be "commenced" in the bankruptcy court. In re Adams, 809 F.2d 1187, 1190 (5th Cir.1987).
 
 
 33
 Still, the Barron and Jaffe Attorneys claim that the Bankruptcy Rules should not be applied at any time in district court, even if cases technically cannot be commenced in the bankruptcy court. They rely upon Metro Communications, Inc. v. Baltimore Radio Show, Inc., 68 B.R. 9 (W.D.Pa.1986), for the proposition that Bankruptcy Rule 7004(d)'s service of process provisions apply only to proceedings conducted in the bankruptcy court. They fail to note, however, that the district court decided Metro Communications under the Bankruptcy Rules before these rules were amended in 1987 to apply to bankruptcy proceedings in both the district and bankruptcy courts. These amendments were designed, in part, to correspond to the substantially revised bankruptcy system in the wake of Marathon and BAFJA: "[b]oth Rules 1001 and 9001 were amended to make clear that the Bankruptcy Rules, not the Federal Rules of Civil Procedure, apply when the district court hears an adversary proceeding." In re Merritt Logan, 109 B.R. at 145. In this light, we reaffirm our earlier conclusion that Bankruptcy Rule 7004(d) applies to all "adversary proceedings" (as defined by the Bankruptcy Rules) conducted in the bankruptcy courts or in the district courts. See, e.g., Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488, 497 (N.D.Ill.1988).[9] And we agree with Judge Leinenweber's reasoning in a similar case:
 
 
 34
 It would seem anomalous to limit nationwide service of process to only those adversary proceedings which are heard in the bankruptcy court. To do so would cause personal jurisdiction to hinge upon whether the district court has withdrawn its reference to the bankruptcy court. Such a limitation would give the plaintiff in an adversary case before a bankruptcy court a more extensive ability to serve defendants than a plaintiff in an identical adversary case before the district court. This result hardly seems justifiable.
 
 
 35
 Stavriotis v. Litwin, 1986 WL 12005 (N.D.Ill. Oct. 19, 1986).
 
 V.
 
 36
 The logical culmination of this analysis is that Diamond and Obie may rely upon Bankruptcy Rule 7004(d), which provides that "[t]he summons and complaint and all other process except a subpoena may be served anywhere in the United States," in effecting service of process on the Barron and Jaffe Attorneys in Michigan. But the Barron and Jaffe Attorneys disagree, contending (in accord with the district court's opinion on reconsideration) that the Bankruptcy Rules may not be applied to non-core proceedings commenced in district court.
 
 
 37
 The Barron and Jaffe Attorneys argue vigorously that non-core claimants (who advance state law claims) should not be allowed to rely upon the broad jurisdictional reach of the Bankruptcy Rules to establish in personam jurisdiction.[10] But nothing in the literal terms of the pertinent rules--and, in particular, nothing in Rules 1001,[11] 7001 or 7004(d)--even remotely suggests that they are to be applied differently in core and non-core proceedings. Indeed, the definition of adversary proceedings contained in Rule 7001 (applying to proceedings commenced "to recover money or property")--which seems broader than the illustrative definition of core proceedings contained in 28 U.S.C.A. section 157(b)(2) (West Supp.1990)--suggests to us that the procedural rules contained in Part VII may be applied to non-core proceedings. We are not alone in reaching this conclusion. See, e.g., In re GEX Ky., Inc., 85 B.R. 431, 434 (Bankr.N.D.Ohio 1987) ("Nowhere does Rule 7004 make a distinction among the classifications of adversary proceedings. Proceedings arising under, arising in or related to a case under Title 11, core and non-core, are all adversary proceedings that receive the same treatment under Rule 7004."); In re Outlet Dep't Stores, 82 B.R. 694, 698 (Bankr.S.D.N.Y.1988) ("Rule 7004(d) is fully in keeping with 28 U.S.C. Sec. 1334(b), which confers on the district courts original but not exclusive jurisdiction of all civil proceedings with a nexus to a bankruptcy case, be those proceedings core or non-core."); see also In re Sonnyco Coal, Inc., 89 B.R. 658, 663-65, 669-70 (Bankr.S.D.Ohio 1988) (upholding nationwide service of process in non-core proceeding); cf. Windsor Communications Group, Inc. v. Grant, 75 B.R. 713, 731-33 (E.D.Pa.1985) (advocating similar treatment of core and non-core proceedings before 1987 amendments).
 
 
 38
 Further, when the Bankruptcy Rules were amended in 1987--to comport with the new jurisdictional scheme created by Marathon and BAFJA--no changes were made relating to Rule 7004(d) to differentiate between core and non-core proceedings, despite the significance of this distinction within the newly-created jurisdictional scheme. See In re GEX Ky., 85 B.R. at 434. And the promulgators of the Rules knew how to draw this distinction when they intended to do so. See, e.g., Bankruptcy Rule 7012(b) (establishing specific procedure for non-core proceedings). Finally, it would seem anomalous for different sets of procedural rules to govern related proceedings in the same court, given the bankruptcy scheme's emphasis on centralization and efficiency. The creation of a dual procedural system would not be consistent with these goals, nor would it comport with Congress's intent to streamline the bankruptcy process. Windsor Communications Group, 75 B.R. at 732 ("[T]he establishment of a dual procedural system is undoubtedly in conflict with the intent of Congress to concentrate jurisdiction over all bankruptcy cases and all proceedings in a single court, as evidenced by the grant of pervasive jurisdiction to the district courts in BAFJA."). Consistent with these goals and the language of the rules, therefore, we hold that courts may apply Bankruptcy Rule 7004(d)--allowing nationwide service of process--in non-core, related proceedings.
 
 VI.
 
 39
 Still, the Barron and Jaffe Attorneys urge that the district court cannot apply the nationwide service of process provisions of Bankruptcy Rule 7004(d) without violating their Fifth Amendment due process rights. As residents of Michigan, they claim that a district court sitting in Illinois lacks in personam jurisdiction over them because they do not have sufficient minimum contacts with the State of Illinois to trigger that state's long-arm statute. Ill.Ann.Stat. ch. 110, p 2-209 (Smith-Hurd 1990).
 
 
 40
 Generally, a court's assertion of personal jurisdiction must comport with "traditional notions of fair play and substantial justice" if it is to satisfy the Due Process Clause of the Constitution. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); see Burnham v. Superior Court of Cal., --- U.S. ----, 110 S.Ct. 2105, 2110, 109 L.Ed.2d 631 (1990) (plurality). " '[T]he constitutional touchstone' of the determination ... 'remains whether the defendant purposefully established "minimum contacts" in the forum State,' " Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 108-09, 107 S.Ct. 1026, 1030-31, 94 L.Ed.2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)), and these minimum contacts must be grounded in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Asahi Metal, 480 U.S. at 109, 107 S.Ct. at 1031 (quoting Burger King, 471 U.S. at 475, 105 S.Ct. at 2183). The Barron and Jaffe Attorneys, all residents of Michigan, contend that they have not established sufficient minimum contacts with Illinois to satisfy the Due Process Clause of the Constitution under these recent cases.
 
 
 41
 We believe, however, that the Barron and Jaffe Attorneys' contacts with the State of Illinois are, for our purposes, simply irrelevant. We have already established that district courts exercise original subject matter jurisdiction over non-core matters pursuant to 28 U.S.C.A. section 1334 (West Supp.1990). Since section 1334 provides federal question jurisdiction, the sovereign exercising its authority over the Barron and Jaffe Attorneys is the United States, not the State of Illinois. Hence, whether there exist sufficient minimum contacts between the attorneys and the State of Illinois has no bearing upon whether the United States may exercise its power over the attorneys pursuant to its federal question jurisdiction. Certainly, the attorneys have sufficient contacts with the United States to be subject to the district court's in personam jurisdiction. See Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir.1987) (federal court in federal question case implements national, not state, policy), cert. denied, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); Fitzsimmons v. Barton, 589 F.2d 330, 333 (7th Cir.1979) ("Here the sovereign is the United States, and there can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court."); see also In re Rusco Indus., Inc., 104 B.R. 548, 551 (Bankr.S.D.Ga.1989); In re K O Trucking Co., 99 B.R. 78, 80 (N.D.Ala.1988); Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488, 497 (N.D.Ill.1988); In re Sonnyco Coal, Inc., 89 B.R. 658, 669 (Bankr.S.D.Ohio 1988); In re GEX Ky., Inc., 85 B.R. 431, 434 (Bankr.N.D.Ohio 1987); In re Outlet Dep't Stores, Inc., 82 B.R. 694, 699 (Bankr.S.D.N.Y.1988) (all concluding that minimum contacts with state are irrelevant when federal question bankruptcy jurisdiction exists). And nationwide service of process has been established in these cases by Bankruptcy Rule 7004(d). We therefore conclude that the nationwide service of process provisions of Bankruptcy Rule 7004(d) do not violate the Barron and Jaffe Attorneys' due process rights in this case, and that the district court may exercise its in personam jurisdiction over these attorneys.VII.
 
 
 42
 Although we might stop there, we continue, for the sake of thoroughness, by reviewing whether the district court might have exercised its diversity jurisdiction in this case (for Diamond and Obie also invoked that court's diversity jurisdiction independent of its bankruptcy jurisdiction) pursuant to the Illinois Long-Arm Statute, Ill.Ann.Stat. ch. 110, p 2-209 (Smith-Hurd 1990). In this regard, we defer substantially to the district court's findings of fact, but we will review, de novo, its conclusions of law. See United States v. Hocking, 860 F.2d 769, 772 (7th Cir.1988).
 
 
 43
 Paragraph 2-209(a) provides, in pertinent part:
 
 
 44
 Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
 
 
 45
 (1) The transaction of any business within this State;
 
 
 46
 (2) The commission of a tortious act within this State....
 
 
 47
 Ill.Ann.Stat. ch. 110, p 2-209 (Smith-Hurd 1990).[12] Further, "[o]nly causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a)." Ill.Ann.Stat. ch. 110, p 2-209(f) (Smith-Hurd 1990).
 
 
 48
 Essentially, when they filed their complaint, Diamond and Obie alleged that the Barron and Jaffe Attorneys' malpractice amounted to the transaction of business and the commission of a tortious act in Illinois. The magistrate (and the district judge, who adopted the Report & Recommendation) disagreed, concluding that Diamond and Obie had not shown that the attorneys' sporadic contacts with Illinois were in any way related to the alleged malpractice or transaction of business.
 
 
 49
 In order to justify the exercise of jurisdiction pursuant to the Illinois long-arm statute, Diamond and Obie must demonstrate three things: (1) that the attorneys committed one of the jurisdictional acts enumerated in Paragraph 2-209; (2) that the cause of action "arose from" the act committed; and (3) that the exercise of long-arm jurisdiction is consistent with due process. John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc., 821 F.2d 399, 402 (7th Cir.1987); Jacobs/Kahan & Co. v. Marsh, 740 F.2d 587, 590 (7th Cir.1984). There seems to be little question that Diamond and Obie have satisfied the first of these elements. The magistrate recited the jurisdictional acts alleged by Diamond and Obie in their complaint, which included travel, letters, document revision and phone calls placed in Illinois. These allegations amount to a prima facie case; indeed, we "must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir.1988); see Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215 (7th Cir.1984).
 
 
 50
 Determining whether the cause "arose from" these jurisdictional acts--the second element--is much more difficult. Illinois courts have liberally construed the term "arising from": Illinois's long-arm statute " 'requires only that the cause of action lie in the wake of the transaction of business.' " John Walker & Sons, 821 F.2d at 403 (quoting Jacobs/Kahan & Co., 740 F.2d at 591); see Loggans v. Jewish Community Center of Milwaukee, 113 Ill.App.3d 549, 555-57, 69 Ill.Dec. 484, 489-90, 447 N.E.2d 919, 924-25 (1st Dist.1983); see also NTN Bearing Corp. v. Charles E. Scott, Inc., 557 F.Supp. 1273, 1275 (N.D.Ill.1983). Applying this standard, the magistrate wrote that Diamond and Obie had failed to demonstrate that their malpractice action "arose from" any of the visits, phone calls, letters or services performed by the Barron or Jaffe Attorneys: "These actions do not appear to constitute the malpractice of which plaintiffs complain." Report & Recommendation at 4.
 
 
 51
 We are perplexed by the magistrate's treatment of Diamond and Obie's jurisdictional argument. Diamond and Obie contend that the two sets of lawyers committed numerous instances of malpractice:
 
 
 52
 (1) they simultaneously represented several corporations that were engaged in transactions with Diamond and Obie; (2) they failed properly to advise Diamond and Obie as to the conflict of interest created by that simultaneous representation; (3) they failed to withdraw from their conflicting representation when they should have done so; and (4) they failed properly to advise Diamond and Obie regarding Diamond's and Obie's fundamentally unsafe and unsound business practices.
 
 
 53
 Appellants' Brief at 10. Essentially, then, Diamond and Obie claim that their lawyers--who acted as general counsel and securities counsel--committed malpractice consistently throughout their ongoing representation. When the attorneys conducted business with, or provided legal advice to, Diamond and Obie in Illinois, they had a duty to reveal their conflict of interest to their clients. Their continuing failure to do so, argue Diamond and Obie, constitutes malpractice.
 
 
 54
 Assuming, as we must for purposes of determining jurisdiction, Deluxe Ice Cream, 726 F.2d at 1215, that these factual allegations have some merit, the Barron and Jaffe Attorneys had an obligation to disclose their conflict of interest when they transacted business or gave legal advice to Diamond and Obie in Illinois. Their alleged failure to do so, therefore, lies "in the wake of" their legal activities in Illinois. Unlike an attorney's legal work in Yates v. Muir, 112 Ill.2d 205, 209-10, 97 Ill.Dec. 394, 396, 492 N.E.2d 1267, 1269 (1986), which was "performed exclusively in Kentucky," the two sets of attorneys here do not dispute that they conducted some legal activities in Illinois. Their failure to disclose their alleged conflict of interest at the time of rendering their services provides sufficient grounds for "arising from" jurisdiction.
 
 
 55
 Still, Diamond and Obie must satisfy the third prong of the standard--that the exercise of long-arm jurisdiction does not violate the due process rights of the attorneys. As we noted earlier, a court's assertion of personal jurisdiction satisfies the Constitution when it comports with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); see Burnham v. Superior Court of Cal., --- U.S. ----, 110 S.Ct. 2105, 2110, 109 L.Ed.2d 631 (1990) (plurality). Further, " 'the constitutional touchstone' of the determination ... 'remains whether the defendant purposefully established "minimum contacts" in the forum State,' " Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 108-09, 107 S.Ct. 1026, 1030-31, 94 L.Ed.2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)), and these minimum contacts must be grounded in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Asahi Metal, 480 U.S. at 109, 107 S.Ct. at 1031 (quoting Burger King, 471 U.S. at 475, 105 S.Ct. at 2183); see Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[13]
 
 
 56
 Diamond and Obie's suit, in our view, is controlled directly by these Supreme Court decisions. The Barron Attorneys, as general counsel, and the Jaffe Attorneys, as securities counsel, intentionally provided at least some services to an Illinois resident in Illinois. The fact that they provided services rather than tangible goods makes little difference; their actions were "purposely directed toward the forum State." Asahi Metal, 480 U.S. at 112, 107 S.Ct. at 1033 (plurality) (emphasis removed); see Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. There is no dispute here whether it was foreseeable that at least some of the attorneys' services would be performed in Illinois; the attorneys tailored their representation--which was performed through visits, letters and phone calls, and which consisted of document revisions and legal consultations--to their clients, Diamond and Obie. See Mason v. F. LLI Luigi & Franco Dal Maschio Fu G.B., 832 F.2d 383, 386 (7th Cir.1987) (custom-made products subject maker to personal jurisdiction in forum). And the precise number of physical visits to Illinois, in any event, may be irrelevant:
 
 
 57
 Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.
 
 
 58
 Burger King, 471 U.S. at 476, 105 S.Ct. at 2184 (emphasis removed). Further, we are not persuaded that the assertion of personal jurisdiction in this proceeding would violate the notion of "fair play and substantial justice" as established in International Shoe; the Barron and Jaffe Attorneys have not demonstrated that their burden in litigating this proceeding in Illinois--the residence of the clients they represented and the site of at least some of their actions--is excessive. See Burger King, 471 U.S. at 476-78, 105 S.Ct. at 2184-85 (listing factors). We cannot say, therefore, that the extension of Illinois's long-arm statute would violate the due process rights of the Barron or Jaffe Attorneys. Hence, we conclude that the district court erred in dismissing Diamond and Obie's suit for lack of personal jurisdiction.
 
 VIII.
 
 59
 Finally, the Jaffe Attorneys assert that, even if the district court improperly dismissed the suit for lack of jurisdiction, its decision can be upheld on an alternate ground: Diamond and Obie's complaint, they argue, fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Jaffe Attorneys posit that the central issue in the case is whether they failed to alert Diamond and Obie to their managers' scheme to defraud the companies' investors. Jaffe Attorneys' Brief at 25. Since, it is contended, Illinois courts will not aid a fraudfeasor who seeks the court's assistance in relieving himself of the consequences of his fraud, see, e.g., Goldstein v. Lustig, 154 Ill.App.3d 595, 603, 107 Ill.Dec. 500, 506, 507 N.E.2d 164, 170 (1st Dist.1987); Robins v. Lasky, 123 Ill.App.3d 194, 202, 78 Ill.Dec. 655, 660, 462 N.E.2d 774, 779 (1st Dist.1984), Diamond and Obie have failed to state a claim upon which relief can be granted. Therefore, the Jaffe Attorneys urge, Judge Williams's dismissal of the suit was proper and should be affirmed.
 
 
 60
 This argument need not detain us long. There is substantial question regarding Diamond and Obie's role in the alleged fraud; we certainly do not resolve such questions in favor of the movant with respect to a Rule 12(b)(6) motion when the plaintiff makes contrary allegations in his complaint. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). In any event, the Jaffe Attorneys owed their duty to Diamond and Obie, not to a group of managers who allegedly acted against the corporations' interests and who allegedly defrauded the corporations' investors.[14] Cf. Wencordic Enters., Inc. v. Berenson, 158 Ill.App.3d 913, 110 Ill.Dec. 730, 511 N.E.2d 907 (2d Dist.1987); In re Investors Funding Corp., 523 F.Supp. 533, 540-41 (S.D.N.Y.1980). We cannot agree, therefore, that Diamond and Obie have failed to state a claim upon which relief can be granted.
 
 IX.
 
 61
 Marathon and BAFJA dramatically changed the exercise of federal jurisdiction pursuant to the nation's bankruptcy laws. Consistent with these changes (and with Article III of the Constitution), Bankruptcy Rules 1001 and 7001 were amended to permit the application of the procedural rules of bankruptcy in federal district court. These amendments authorize district courts to exercise their in personam jurisdiction over parties pursuant to the nationwide service of process provisions of Rule 7004(d). A contrary reading of Rule 7004(d) seems unfaithful to the literal terms of the Bankruptcy Rules and to the underlying congressional goals that culminated in this extensive overhaul of the bankruptcy system.
 
 
 62
 REVERSED AND REMANDED.
 
 
 
 [1]
 The Barron Attorneys consist of Ronald M. Barron, Ronald M. Barron and Associates, P.C., Barron & Knoppow, P.C., Barron & Linden, P.C., Barron, Linden & Fagan, P.C. and Ronald M. Barron, P.C
 
 
 [2]
 The Jaffe Attorneys consist of Peter Sugar, David D. Warner and Jaffe, Snider, Raitt & Heuer, P.C
 
 
 [3]
 Justice Brennan seems to have introduced the notion of "core" and "non-core" proceedings: "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages...." Marathon, 458 U.S. at 71, 102 S.Ct. at 2871 (plurality). Congress has since defined core proceedings, which can be described generally as those proceedings involving rights created directly by federal bankruptcy law, with great specificity. See 28 U.S.C.A. Sec. 157(b)(2) (West Supp.1990)
 
 
 [4]
 We dismiss the Jaffe and Barron Attorneys' intimation at oral argument that Diamond and Obie's decision to base their suit on the district court's diversity jurisdiction--as well as on its Title 11 jurisdiction--somehow divested the district court of its ability to rely upon the service of process provisions of the Bankruptcy Rules. Surely, Diamond and Obie should not be penalized for their ability to ground their suit on two bases of jurisdiction instead of only one. It would be absurd to grant a court broader in personam powers because a party has eliminated one of its grounds of jurisdiction
 
 
 [5]
 Of course, the Barron and Jaffe Attorneys might argue that our construction of the term "proceedings in bankruptcy" (as used within the context of Federal Rule of Civil Procedure 81(a)(1)) should be confined to core proceedings, because these proceedings most closely resemble summary matters, as we explained above. Alternatively, Diamond and Obie might contend that Congress's decision not to amend the term "proceedings in bankruptcy"--in the wake of the massive overhaul of the bankruptcy system--reflects Congress's intent to preclude application of the Federal Rules of Civil Procedure to any "proceeding," whether core or non-core. Both of these arguments seem to have at least some merit, but curiously, neither side has advanced them. In any event, we cannot rely upon outdated references to summary and plenary matters (in the wake of the 1978 Act, Marathon, the Emergency Jurisdictional Rule and BAFJA), nor can we accord substantial weight to Congress's failure to act, especially since the Supreme Court, not Congress, promulgates the Federal Rules of Civil Procedure
 
 
 [6]
 28 U.S.C. section 2075 (1982) authorizes the Supreme Court "to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11."
 
 
 [7]
 These stand in contrast to "contested matters" that are resolved summarily. See Bankruptcy Rule 9014; see also 1 R. Ginsberg, Bankruptcy Sec. 1.07[a] (2d ed. 1989)
 
 
 [8]
 Of course, in reaching this conclusion, we assume for the moment that the Bankruptcy Rules apply to both "core" and "non-core" proceedings. We shall examine this assumption in a moment
 
 
 [9]
 Indeed, it would seem illogical to suggest that the bankruptcy courts--whose jurisdiction was substantially curtailed by BAFJA--could exercise broader in personam jurisdiction than the district courts. Yet the Barron and Jaffe Attorneys' position leads precisely to that result: under that scheme, district courts could authorize service only within the bounds of the Federal Rules of Civil Procedure, while bankruptcy courts could authorize nationwide service pursuant to Rule 7004(d). This outcome--which allows the bankruptcy court broader powers than the district court--flies in the face of Marathon and BAFJA. Such a result would also effectively transform the bankruptcy courts into much more than "units" of the district court, presumably in violation of Marathon. See 28 U.S.C.A. Sec. 151 (West Supp.1990)
 
 
 [10]
 They also contend that Diamond and Obie's "fortuitous" filing of a bankruptcy petition before bringing state law claims should not extend the jurisdictional reach of the district court. Jaffe Attorneys' Brief at 8. Surely, this statement cuts too broadly: if, in fact, the attorneys' malpractice led to the insolvency, as Diamond and Obie claim, the filing of a bankruptcy petition can hardly be described as fortuitous. Moreover, even if the two actions were unrelated, any judgment against the Barron and Jaffe Attorneys might substantially augment the assets available for distribution to the estate. And it certainly is not unusual for the filing of a bankruptcy petition to alter substantially rights that may have previously existed. See, e.g., 11 U.S.C.A. Sec. 547(b) (1982 & West Supp.1990) (discussing preferences)
 
 
 [11]
 The Advisory Committee tells us only that Rule 1001 "makes the Bankruptcy Rules applicable to cases and proceedings under title 11, whether before the district judges or the bankruptcy judges of the district." Bankruptcy Rule 1001 advisory committee's notes to 1987 amendment
 
 
 [12]
 It appears that courts in Illinois may now base long-arm jurisdiction on "[t]he breach of any fiduciary duty within this State." Ill.Ann.Stat. ch. 110, p 2-209(a)(11) (Smith-Hurd 1990) (as amended in 1989). Diamond and Obie have not asserted this jurisdictional basis--which was created after they filed this suit--for their claim. As such, we do not consider its application here
 
 
 [13]
 The Barron and Jaffe Attorneys urge us to apply the test for in personam jurisdiction proposed by a district court in Oxford First Corp. v. PNC Liquidating Corp., 372 F.Supp. 191, 201-04 (E.D.Pa.1974), which adopts a notion of "fairness" as the touchstone for in personam jurisdiction. Oxford suggests that courts must examine the extent of a defendant's contacts with the foreign jurisdiction, the inconvenience faced by a defendant in defending the case there, the maintenance of judicial economy, the probable site of discovery proceedings and the nature of the regulated activity in question. Id. at 203-04. The problem with the Oxford test, however, is that this court has expressly rejected it. Fitzsimmons v. Barton, 589 F.2d 330, 334 (7th Cir.1979); see Lisak v. Mercantile Bancorp., Inc., 834 F.2d 668, 671-72 (7th Cir.1987) (approving Fitzsimmons ), cert. denied, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988). And contrary to the attorneys' protestations, the Supreme Court's decision in Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)--and Bauxites's emphasis on individual liberty instead of sovereignty (for purposes of in personam jurisdiction, id. at 702, 102 S.Ct. at 2104)--is not inconsistent with Fitzsimmons or Lisak
 
 
 [14]
 It is premature, at this stage of the proceedings, to invoke the principles of estoppel articulated in Cenco Inc. v. Seidman & Seidman, 686 F.2d 449 (7th Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). There, we concluded that, in specific circumstances, a corporation, whose officers commit fraud to the benefit of the corporation, may be estopped from shifting the responsibility of the fraud to outside auditors. Whether the Jaffe Attorneys can establish a Cenco -like defense will depend upon further development of this case, including whether the fraud benefited the corporations and whether a potential recovery would inure to the benefit of the fraudfeasors. See Schacht v. Brown, 711 F.2d 1343, 1345-48 (7th Cir.), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); Cenco, 686 F.2d at 454-57. The facts of this case, at the present time, simply are insufficiently developed to allow dispositive application of Cenco