**In re HARDWICKE COMPANIES INCORPORATED, Debtor.**

**MURRAY, HOLLANDER, SULLIVAN & BASS, Appellant,**

v.

**HARDWICKE COMPANIES INCORPORATED, Appellee.**

**Bankruptcy No. 83–B–11453. No. 86 Civ 0147(LBS).**

United States District Court, S.D. New York.

June 19, 1986.

See also, D.C., 56 B.R. 244.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, for appellee Hardwicke Companies Inc.; A. Peter Lubitz, Jay L. Gottlieb, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for appellant Murray, Hollander, Sullivan & Bass; Michael L. Cook, Dana H. Freyer, Bruce A. Levine, of counsel.

SAND, District Judge.

## I. INTRODUCTION

Murray, Hollander, Sullivan & Bass ("Murray Hollander") appeals from an Order (the "Order") of the Bankruptcy Court (Lifland, B.J.), announced in open court on November 19, 1985. That Order denied Murray Hollander's motion to dismiss the second through fifth counterclaims of debtor Hardwicke Companies, Inc. ("Hardwicke"), which Hardwicke had asserted in response to the claim filed by Murray Hollander in Hardwicke's reorganization case.[1] Murray Hollander, a law firm, contends that the disputed counterclaims, which allege legal malpractice, should be dismissed for lack of subject matter, or federal, jurisdiction. Alternatively, it contends the Bankruptcy Court should "abstain" from hearing the counterclaims. Murray Hollander made its alternative motion before the Bankruptcy Court, which, as we discuss below, declined to rule on it.

Leave to appeal from the Bankruptcy Court's interlocutory order and expedited consideration of that appeal by this Court was granted by the Part I Judge (Pollack, Senior D.J.), pursuant to 28 U.S.C. § 158(a). For the reasons elaborated below, we find that there is indeed subject matter jurisdiction in the federal courts and thus affirm the Bankruptcy Court's ruling. Because we think the questions are not ripe for our review, we do not decide either whether the Bankruptcy Court is the appropriate federal court to hear the counterclaims or whether the federal courts should abstain from hearing the counterclaims.

We note at the outset that our review of the Bankruptcy Court's Order is de novo. While the parties differ as to the proper standard to be applied, they agree that legal, unlike factual, findings properly receive de novo review on appeal. We see in the Bankruptcy Court's Order no explicit findings of fact. At most, there are mixed conclusions of law and fact that seem to us to be based on undisputed facts in the record.

The relevant background facts of the case are as follows:

On October 4, 1983, Hardwicke filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Murray Hollander filed a claim as a secured creditor for unpaid legal services and disbursements, amounting to approximately $200,000 for the periods of time from January 27 through May, 1982 and from January through July, 1983.

Hardwicke presented a Plan of Reorganization (the "Plan"), which was confirmed by the creditors on February 28, 1985. Pursuant to the Plan, unsecured creditors received at their option either cash payments or stock in a new corporation into which Hardwicke was to be merged immediately after confirmation.

On April 30, 1985, after confirmation of the Plan, Hardwicke objected to the Murray Hollander claim and, additionally, asserted five counterclaims against Murray Hollander, the last four alleging legal malpractice on matters antedating the reorganization proceedings.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

In determining whether subject matter jurisdiction lies in the instant case, it is

---

1. Murray Hollander does not contest the Bankruptcy Court's exercise of jurisdiction over Hardwicke's first counterclaim, which asserts a cause of action to set aside preferences.

helpful to begin with a description of the relevant statutory scheme and the events that led to its enactment.[2] In 1978, Congress passed a Bankruptcy Act, Pub.L. 95–598, 92 Stat. 2549 (the "1978 Act"), which contained a jurisdictional provision stating that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 1978 Act, 92 Stat. at 2668 (codified as 28 U.S.C. § 1471(b) (1982)) ("section 1471"). The next subsection of 1471 provided that "[t]he Bankruptcy Court ... shall exercise all of the jurisdiction conferred by this section on the district courts." *Id.* (codified at 28 U.S.C. § 1471(c) (1982)).

In relevant substance, this scheme provided for two things. First, it gave the federal district courts jurisdiction over claims under state law if those claims were in some manner "related" to the Chapter 11 proceedings. Second, it delegated this jurisdiction to the bankruptcy courts in a wholesale fashion.

In *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 62, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982), the Supreme Court held that "the [1978] Act's conferral of broad adjudicative powers upon [the bankruptcy] judges" was unconstitutional because those judges did not possess Article III status yet were passing on state claims. By itself, this holding would not necessarily have upset the district court's exercise of jurisdiction over "related" state claims pursuant to section 1471. The plurality opinion, however, voided this district court jurisdiction on the grounds that the Supreme Court could not

"assume, as the Chief Justice suggests [in a dissenting opinion], *post,* at 92, 102 S.Ct. at 2882, that Congress' choice would be to have this case 'routed to the United States district court of which the Bankruptcy Court is an adjunct.'" *Id.* at 87 n. 40, 102 S.Ct. at 2880. Thus, the Court left it to "Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III in the way that will best effectuate the legislative purpose." *Id.*

On July 10, 1984, Congress responded by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (the "1984 Act"). Section 101(a) of the Act amended 28 U.S.C. § 1334 ("section 1334") such that section 1334(b) is now identical to section 1471 under the 1978 Act. Thus, section 1334(b) grants the district courts original, but not exclusive, jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11."[3] In addition, section 104(a) of the 1984 Act added to title 28 new jurisdictional provisions regarding bankruptcy judges. Section 157(b)(1) of title 28 now provides that "[b]ankruptcy judges may hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11...." Section 157 then goes on to define "core proceedings."

By making section 1334(b) of the 1984 Act track the broad jurisdictional grant of section 1471(b) of the 1978 Act, Congress evidenced an intent to retain the same level of *federal* jurisdiction over state claims "related" to bankruptcy proceedings post-*Northern Pipeline* as there had been pre-*Northern Pipeline.*[4] In compliance with

---

**2.** In so doing, we borrow from Judge Sofaer's analysis in *In re Environmental Research & Development,* 46 B.R. 774, 776–78 (S.D.N.Y.1985).

**3.** Section 1334(b) reads as follows:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**4.** In granting to the federal district courts in the 1984 Act the same jurisdiction as they held previously, Congress was acting constitutionally. *See Ram Construction, supra,* 49 B.R. at 365–66. It was not violating the dictates of *Northern Pipeline,* which held only that the congressional delegation of jurisdiction to the bankruptcy courts was unconstitutional. *See In re Lafayette Radio Electronics Corp.,* 761 F.2d 84, 88 n. 1 (2d Cir.1985). Moreover, this jurisdictional grant is constitutionally empowered by section 2 of Art. III, which grants federal jurisdiction over cases "arising under" federal law

*Northern Pipeline,* Congress did, however, strip the bankruptcy courts of their authority to adjudicate "non-core" claims, although those courts may make proposed findings of fact and conclusions of law to the district court about such claims. 28 U.S.C. § 157(c)(1). Further evidence that Congress intended the district courts to retain the same broad jurisdiction as they held previously is found in the relevant legislative history of section 1334. The Senate version of that section, which would have "prohibited the bankruptcy courts *or district courts* from considering *any* case that was based upon a state law claim" was rejected in favor of the broader House version that ultimately passed. Statement of Sen. Robert Dole, June 29, 1984 *reprinted in* 1984 U.S.Code Cong. & Ad.News 586, 587 (emphasis added), *cited in In re Environmental Research & Development,* 46 B.R. 774, 777 (S.D.N.Y.1985). *See also Ram Const. Co. v. Port Auth. of Allegheny County,* 49 B.R. 363, 365 (W.D.Pa. 1985).

■ We conclude that the federal courts have jurisdiction over the counterclaims here because the counterclaims do indeed "aris[e] in or [are] related to [a] case[] under title 11" pursuant to section 1334(b). In *In re Turner,* 724 F.2d 338, 341 (2d Cir.1983) (Friendly, J.) (quoting 1 Collier, Bankruptcy ¶ 3.01[1][e] (15th ed. 1983), at 3–49) the Second Circuit quoted approvingly from a broad reading of "arising in or

related to" jurisdiction although it did not find it to lie there:

> Conceptually, there is no limit to the reach of this jurisdiction, insofar as the matter involved "arises in or [is] related to" the title 11 case. Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the Bankruptcy Court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court's jurisdiction. *The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered.* [Emphasis added.]

In light of the foregoing as well as the policy considerations that underlie granting broad jurisdiction to the federal courts in bankruptcy-related matters,[5] we agree with the Bankruptcy Court that the facts here, when viewed in totality, provide ample grounds for the exercise of federal jurisdiction. In the first place, the counterclaims, if successful, would confer a major benefit on the debtor's estate. According to Hardwicke, ninety-seven percent of Hardwicke's unsecured creditors, who collectively hold 99.4 percent of Hardwicke's unsecured debt, have elected to become shareholders in the reorganized debtor [6] and thus, would

such as bankruptcy and which has been read broadly to allow for pendent jurisdiction. *See Ram, supra,* 49 B.R. at 365–66.

5. The policy reasons behind the "arising in or related to" Jurisdiction found in section 1471(b) were explained in *Turner, supra,* 724 F.2d at 340–41 (citations omitted):

> Chief among [Congress's reasons] was the fact that although the Bankruptcy Courts had in the past exercised jurisdiction over a wide range of proceedings, "a considerable part of a trustee's litigation to recover assets of the estate must be initiated in some court other than the Bankruptcy Court." It was believed that this bifurcation of jurisdiction over matters obviously pertinent to the bankruptcy case no longer served any identifiable policy objective; indeed, it seemed to promote noth-

ing but delay, inconvenience, and the litigation of abstruse jurisdictional issues, all of which tended to work to the prejudice of the estate. What was needed was a "comprehensive grant of jurisdiction ... over all controversies arising out of any bankruptcy or rehabilitation case." There being no reason "why Congress cannot in the exercise of its power under the Bankruptcy Clause of the Constitution confer jurisdiction over all litigation having a significant connection with bankruptcy," it enacted § 1471(b).

6. Murray Hollander contends that the Bankruptcy Court never made any "specific finding as to how many former creditors would benefit from a recovery on the Counterclaims." Murray Hollander's Reply Brief at 14–15. It has not, however, explicitly contested the figures themselves.

benefit from successful prosecution of the counterclaims.[7] Hardwicke's Memorandum of Law at 23–24; *see also* Sur-Reply Affidavit of Donald Schupak at ¶ 5, *reprinted in* Debtor's Appendix ("D.A.") at 456–57. Moreover, the alleged malfeasance giving rise to the counterclaims occurred before the filing of the petition in bankruptcy and indeed is claimed to be one of the reasons that the debtor was forced into bankruptcy. Members of the Murray Hollander firm "acted as officers and directors of virtually all the Debtor's ... subsidiaries and affiliates...." Hardwicke's Memorandum of Law at 9. In sum, the relationship of Murray Hollander with Hardwicke and the potential benefit to Hardwicke's creditors who elected to receive stock in the reorganized company is such as to justify federal bankruptcy—if not bankruptcy *court*—jurisdiction over this case.

This case is distinguished from those relied on by Murray Hollander in which federal jurisdiction was found not to lie. We agree with the Bankruptcy Court, D.A. at 563, that *Turner, supra,* 724 F.2d 338 (2d Cir.1983) is inapposite because the claim there, unlike here, was brought by a debtor in her own name after confirmation of a plan and there [was] no suggestion that the proceeds would eventually reach the creditors. Likewise, *In re Bobroff,* 43 B.R. 746

(E.D.Pa.1984), *aff'd* 766 F.2d 797 (3d Cir. 1985) is inapplicable because the debtor's claim in *Bobroff,* if successful, would not have benefitted the estate as the claim accrued after the filing of the petition in bankruptcy. Both these cases, as well as others relied on by Murray Hollander, merely stand for the proposition that a claim is not "arising in or related to" a bankruptcy case when it does not benefit the debtor's creditors.

Murray Hollander also cites *Whiteford Plastics Co. v. Chase Nat'l Bank,* 179 F.2d 582, 584 (2d Cir.1950), for the proposition that "where the creditors have received cash or stock for their claims ... there is no reason to safeguard their rights further." *Whiteford Plastics,* however, is distinguishable from the instant case because there the creditors had never been informed that the reason that the debtor was trying to recover in a separate suit might have been part of the estate. Here, the Creditors' Committee had been made aware of the claims for malpractice that the debtor planned to assert against Murray Hollander and Hardwicke's disclosure statement itself contains a reference, albeit ambiguous, to a potential claim. *See* Disclosure Statement at 46, *reprinted* in D.A. at 73;[8] Schupak Aff. at ¶¶ 10–12, reprinted in D.A. at 460–61.[9] Further in this regard,

---

**7.** Despite this powerful statistic, Murray Hollander claims great significance for the fact that of those creditors who actually voted on whether to either accept stock in the debtor's reorganized company or accept cash, 56 percent chose cash. Reply Brief of Murray Hollander at 15. But this statistic indicates only that most creditors did not vote, thus automatically becoming shareholders in the reorganized company. Hardwicke Memo. at 13.

**8.** The disclosure statement reads in pertinent part:

The settlement of the Chiulli shareholder derivative action brought on behalf of the Debtor against certain now former officers and directors will result in the payment to it of approximately $250,000 paid by the issuer of its officers' and directors' insurance policy, over and above the costs and expenses of such action. The net proceeds to be realized have been allocated by the Debtor as part of the monies necessary for consummation of the Plan. *The Debtor intends to obtain the dismis-*

*sal of this action without prejudice to its claim against James Murray, a former officer and director of the Debtor and various of it [sic] subsidiaries and who is a senior partner of the law firm which was general counsel to the Debtor for a number of years prior to February, 1983. Mr. Murray and his law firm each have filed Claims in this Chapter 11 case.* The Debtor has agreed to identify its officers' and directors' liability insurance carrier which has provided the settlement monies described above, if and to the extent such carrier subsequently becomes liable to Mr. Murray as the result of the successful assertion of the Debtor of claims against him. [emphasis added].

**9.** We realize this finding is somewhat at odds with a statement in Judge Pollack's decision (at page 2) that "[t]he Disclosure Statement, approved by the Bankruptcy Judge on January 30, 1985 for distribution to creditors to solicit approval of the Debtors Plan, made no mention of the existence of any counterclaims by the Debt-

our finding that the federal courts have subject matter jurisdiction here is not upset by the fact that the reorganization Plan (the "Plan") had already been confirmed. Although not beyond dispute, the Plan itself seemed to contemplate the type of post-confirmation jurisdiction sought here.[10] Despite Murray Hollander's assertions to the contrary, we see nothing in the Plan or Disclosure Statement to preclude this post-confirmation action from bankruptcy jurisdiction.

## B. The "Abstention" Issue

Murray Hollander moves this Court, if it finds federal jurisdiction to lie, to nevertheless order the Bankruptcy Court to "abstain" from hearing the disputed counterclaims. Murray Hollander supports this motion with a jumble of reasons as to why the counterclaims should not be heard by the federal courts in general and the bankruptcy court in particular. By offering this melange of reasons, Murray Hollander confuses the issue.

■ "Abstention" from bankruptcy proceedings refers to the *federal* court's prerogative to refrain from exercising the jurisdiction it rightfully possesses. Section 1334(c)(1) of 28 U.S.C. grants the federal district courts the discretion to abstain from "hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11" if it deems that doing so is "in the interest of justice, or in the interest of comity with State courts or respect for State law."[11] Obviously this is a different issue from whether the bankruptcy court rather than the district court is the proper federal court to hear a matter. That question is governed by section 157 of 28 U.S.C. ("section 157").

Section 157, as noted above, provides the procedures for allocating bankruptcy and bankruptcy-related proceedings between the district and bankruptcy courts. These procedures were designed to rectify the constitutional infirmities that *Northern Pipeline* found in the wholesale transfer of these matters to the bankruptcy court. The scheme was recently described by Judge Goettel in *In re Capital Lion Group*, 48 B.R. 329 (S.D.N.Y. April 12, 1985) (footnotes omitted):

> Under ... section 157(a) ... each district court may provide that any or all bankruptcy matters under Title 11 (core and non-core proceedings) shall be referred to the bankruptcy judge for the district. By order dated July 10, 1984,

or against Murray Hollander lawyers for legal malpractice or for any other cause."

We also note that Murray Hollander disputes Hardwicke's assertion that the creditors' committee was informed of the existence of the malpractice claims. *See* Murray Hollander's Reply Brief at 20 n. ** The affidavits on which it relies, however, do not directly refute the point.

10. The Plan reads in pertinent part:
> The Court shall retain jurisdiction of this case for the following purposes:
> (a) to determine any and all objections to the allowance of ... claims ...
> &ast; &ast; &ast; &ast; &ast; &ast;
> (d) To determine any and all adversary proceedings ... over which the Court had jurisdiction prior to the Consummation Date .....
> &ast; &ast; &ast; &ast; &ast; &ast;
> (g) To determine such other matters as may be provided for in the order of the Court confirming the Plan or as may be authorized under the provisions of the Code.

*See* D.A. at 143–44. *See also* the Bankruptcy Court's Order, Appellant's Appendix ("A") at 351 (" ... I don't see that this Debtor is operating as a post-confirmation entity when it is dealing with activities where the jurisdiction was reserved pursuant to an Order of Confirmation"). Furthermore, the Disclosure Statement accompanying the plan reads:

> The Plan provides that the *Court shall retain jurisdiction for all purposes* including, without limitation, the determination of all controversies arising under or in regard to the Plan, *objections to claims,* and the continuation of orders in this case, *until the completion of all distributions due to be made under the Plan.* (emphasis added).

Moreover, we do not believe, as Murray Hollander contends, that the disclosure statement is meant to preclude federal jurisdiction over counterclaims, such as those asserted here, by its explicit grant to the debtor of the right to assert "claims against its creditors available in the nature of set-offs...."

11. Section 1334(c)(2) of 28 U.S.C. concerns circumstances calling for mandatory abstention. but is not relevant here.

the honorable Robert J. Ward, Acting Chief Judge for the United States District Court for the Southern District of New York made a blanket reference of all bankruptcy matters to the bankruptcy judges of this district.

The remainder of section 157 sets forth the manner in which the Bankruptcy Courts and the district courts are to deal with core and non-core proceedings. Pursuant to section 157(b)(1), bankruptcy judges may hear and enter final orders in all cases under Title 11 and in all core proceedings, subject to review under section 158. This review encompasses the traditional standard of appellate review.

Pursuant to section 157(c), bankruptcy judges may also hear proceedings that are not core proceedings, but that are otherwise related to a case under Title 11. Non-core proceedings, however, are dealt with in a manner similar to references to magistrates under the Federal Magistrates Act, 28 U.S.C. §§ 631–39 (1982). Under section 157(c), bankruptcy judges may hear a non-core proceeding but may not enter a final order unless the parties consent. Absent consent, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. In turn, the district court shall enter a final decision after considering the proposed findings of fact and conclusions of law but on objections as to any matter, the district court shall review the matter de novo. In reviewing matters de novo, the district court is required to make an independent assessment of the issues. *See Moodey v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.), *cert. denied* [469 U.S. 982] 105 S.Ct. 386 [83 L.Ed.2d 321] (1984) (decided under the emergency rule which existed prior to the effective date of the 1984 Act).

Finally, section 157(d) permits the court to withdraw either core or non-core proceedings from the Bankruptcy Court on its own motion or upon a motion of a party, and sets forth the circumstances under which such a withdrawal is compelled. The provision states that:

> [t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting commerce.

Given that whether the federal courts should "abstain" from hearing the counterclaims is a separate question from whether the Bankruptcy Court (rather than the district court) should hear the counterclaims, and given our finding made on interlocutory appeal that there is *federal* jurisdiction over the disputed counterclaims, we see Hardwicke as having at least three options: 1) it can litigate the counterclaims in the bankruptcy court subject to rules regarding core and non-core proceedings and district court review; [12] 2) it can move the *bankruptcy* court for an order that the *federal* courts should abstain from hearing the counterclaims pursuant to section 1334(c)(1); or 3) it can move the District Court to withdraw the counterclaims from the Bankruptcy Court pursuant to section 157(d) and all other appropriate rules.

■ We do not think it proper at this time for this Court to rule on the substance of either the abstention question or the withdrawal question. We think that if Murray Hollander wants the abstention issue addressed at this point in the proceedings, then Murray Hollander should move the Bankruptcy Court for a ruling. We do not read in Judge Lifland's Order an intent to abandon this question to the district court.[13] Judge Lifland said he was "not

---

**12.** The Bankruptcy Court had not yet addressed whether these counterclaims were core or non-core proceedings at the time this interlocutory appeal was taken. *See* the Order at D.A. 590.

**13.** The statute does not indicate whether the abstention issue should be decided by the Bankruptcy Court or by the District Court. Although, a few cases have indicated that the

**120**

inherently turning away on the question of abstention." D.A. 596–97. Rather, recognizing that the trial of the counterclaims in Bankruptcy Court would be problematic, he attempted to assist the parties by making a clear finding on the question of subject matter jurisdiction so that Murray Hollander could then assess its options, including the option of moving the district court to withdraw the case from the Bankruptcy Court.[14] Murray Hollander did not choose that road, but instead sought this interlocutory appeal of Judge Lifland's order. And, as noted above, we feel constrained to limit our review to the scope of the Order appealed, *i.e.*, the question of subject matter jurisdiction. Indeed, it is not entirely clear whether either party would even want this Court to consider withdrawal at this juncture.[15] What is clear is that Judge Lifland left it to Murray Hollander to make the next move and the move Murray Hollander chose to make was this interlocutory appeal rather than a motion for a section 157(d) withdrawal.[16]

### III. CONCLUSION

The Bankruptcy Court's Order finding federal subject matter jurisdiction is affirmed. The case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion.

SO ORDERED.

---

District Court should decide, in the absence of contrary authority in this jurisdiction or any relevant local bankruptcy rule, we endorse the majority view that this issue should be addressed first to the bankruptcy court. *See also* 1 Collier on Bankruptcy ¶ 3.01[3][1] at 3–59 (1986).

**14.** Indeed, the Bankruptcy Court commented that "in my view it might even be appropriate for [Murray Handler] to make that motion." Order at D.A. 594.

**15.** Murray Hollander, in mixing the abstention and removal questions, repeatedly urges that the Bankruptcy Court is not the appropriate forum to hear the counterclaims. But it goes on to argue that, therefore, the *state courts* should hear the claim without considering the possibility that the federal *district* court is the appropriate forum. *See, e.g.,* Murray Hollander's Reply Brief at 40–42.

**16.** Murray Hollander claims that the Bankruptcy Court suggested that "Murray Hollander should seek withdrawal of the Counterclaims from the Bankruptcy Court to the district court

so that the jurisdictional issue could be considered *de novo*." Murray Hollander's Brief at 5. This assertion, however, mischaracterizes the record. The Bankruptcy Judge's order clearly contemplated that should Murray Hollander choose to seek withdrawal it should do so because trial of the counterclaims in the *Bankruptcy* Court (rather than the district court) would be problematic, possibly on constitutional grounds. If the Bankruptcy Court treated the claims as "core" claims and entered a final order, this might violate *Northern Pipeline's* prohibition against the Bankruptcy Court's exercise of Article III powers. If, on the other hand, it treated the claims as non-core, it would have to make findings of fact subject to district court review. By making these findings it would deprive Murray Hollander of its otherwise existing right to a jury trial on the state malpractice claims. But if the Bankruptcy Court granted such a jury trial in a non-core case, there would be a question as to whether the district court would have to hold a second jury trial as part of its *de novo* review.