**RAF FINANCIAL CORPORATION, et al., Plaintiffs,**

v.

**RESURGENS COMMUNICATIONS GROUP, INC., Defendant and Third–Party Plaintiff,**

v.

**KIRKPATRICK & LOCKHART, Third–Party Defendant.**

**Civ. A. No. 89–A–1878.**

United States District Court, D. Colorado.

April 26, 1991.

Charles C. Bonniwell, Dennis A. Graham, Hopper, Kanouff, Smith, Peryam & Terry, Denver, Colo., for plaintiffs.

Glenn W. Merrick, Thomas C. Bell, Davis, Graham & Stubbs, Denver, Colo., for defendant and third-party plaintiff.

Edwin S. Kahn, Kelly, Haglund, Garnsey & Kahn, Denver, Colo., Paul C. Huck, H. Mark Vieth, Proenza, White, Huck & Roberts, P.A., Miami, Fla., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Senior District Judge.

This matter is before the court on the motion of third-party defendant Kirkpatrick & Lockhart ("K & L") to dismiss the third-party complaint. A hearing was held on February 21, 1991. The court had considered the briefs, papers, and oral arguments submitted by counsel and finds and rules as follows.

## BACKGROUND

On October 27, 1989, RAF Financial Corporation, *et al.* ("RAF") brought suit against Resurgens Communications Group, Inc. ("Resurgens") under the terms of a previous settlement agreement between the two parties. RAF claimed that Resurgens did not effectuate the registration of certain warrants and underlying shares with the Securities Exchange Commission as required by the settlement, and hence plaintiffs suffered losses in excess of one million dollars. Resurgens claims that the settlement agreement is null and void and that any claim of the plaintiffs was discharged in the bankruptcy proceedings of Central Corporation (now Resurgens) commenced in November, 1988. Resurgens moved for summary judgment which was denied by this court on September 27, 1990.

The third-party defendant, Kirkpatrick & Lockhart ("K & L"), is a law firm which maintains offices in Pittsburgh, Harrisburg, Washington D.C., Boston and Miami. The legal services which are the basis for the third-party complaint were performed primarily in the Miami office in connection with Central Corporation's bankruptcy proceeding pending in the Southern District of Florida. K & L has no partners who are residents of Colorado and no partnership assets in Colorado.

The K & L firm represented Central in its bankruptcy action under chapter 11 which remains pending in the Southern District of Florida. Resurgens' third-party complaint alleges legal malpractice in the handling of the bankruptcy case, breach of express and implied contract to provide legal services and obtain a discharge of RAF's claims, and negligent misrepresentation. The third-party complaint was based upon diversity jurisdiction under 28 U.S.C. § 1332 and federal question, 28 U.S.C. § 1334(b).

## DISCUSSION

K & L argues that this court does not have *in personam* jurisdiction over it because K & L does not have the minimum contacts required under Colorado's long arm statute. Resurgens argues that K & L is subject to nationwide service of process under the provisions of Bankruptcy Rule 7004(d), and in the alternative that K & L is subject to Colorado's long-arm statute.

## I. *Does Bankruptcy Rule 7004(d) Apply in This Action?*

Rule 7004(d) provides that the summons and complaint and all other process except a subpoena may be served anywhere in the United States. 11 U.S.C.A. § 7004(d). In *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991), the Seventh Circuit addressed the issue of whether Rule 7004(d) applies to "non-core" bankruptcy actions. The defendants in *Diamond* were attorneys who resided and practiced in Michigan. The plaintiffs, chapter 11 debtors, brought an action against them in Illinois alleging legal malpractice and breach of fiduciary duties. *Id.* at 1236. The defendants filed a motion to dismiss for lack of personal jurisdiction claiming that they

were neither citizens nor residents of Illinois, and that the legal services they rendered had been performed in Michigan. *Id.* The plaintiffs maintained that the defendants were amenable to service under 7004(d).

The Seventh Circuit undertook an extensive review of the history of the Bankruptcy Act. The defendants in *Diamond* "argued vigorously" that non-core claimants that advance state law claims should not be allowed to rely upon the broad reach of the Bankruptcy Rules to establish *in personam* jurisdiction. The court stated that "... nothing in Rules 1001, 7001, or 7004(d)—even remotely suggests that they are to be applied differently in core and non-core proceedings." *Id.* at 1243; *see also Teitelbaum v. Choquette & Co., Inc. (In re Outlet Dep't Stores, Inc.),* 82 B.R. 694, 698 (Bankr.S.D.N.Y.1988) (Rule 7004 does not make distinctions among the classifications of adversary proceedings); *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 89 B.R. 658, 663–65, 669–70 (Bankr.S.D. Ohio 1988) (upholding nationwide service of process in non-core proceedings). The *Diamond* court stated that "... whether there exist[s] sufficient minimum contacts between the attorneys and the State of Illinois has no bearing upon whether the United States may exercise its power over the attorneys pursuant to its federal question jurisdiction." *Diamond Mortgage v. Sugar,* 913 F.2d at 1244. In conclusion, the *Diamond* court held "that courts may apply bankruptcy rule 7004(d)—allowing nationwide service of process—in non-core, related proceedings." *Id.* at 1243–44.

Section 1334(b) of Title 28, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." The

court found that while the malpractice action was not a "core" proceeding in bankruptcy, the action was related to the bankruptcy proceeding in that its resolution "... may have a direct and substantial impact on the asset pool available for the distribution to estates." *Id.* at 1239. Consequently, "... the district court could have exercised its bankruptcy subject matter jurisdiction over the claim." *Id.* at 1239.

 K & L argues that *Diamond Mortgage* is distinguishable because the third-party complaint in the case at bar is not "related to bankruptcy" under Section 1334(b).[1] K & L maintains that since the assets have already been distributed and the bankruptcy reorganization plan has been confirmed, the third party case cannot have a "direct and substantial impact on the asset pool available for distribution." *See Id.* K & L points out that the *Diamond* court cited to *Elscint, Inc. v. First Wisconsin Financial Corporation (In re Xonics, Inc.),* 813 F.2d 127, 131 (7th Cir. 1987) for its definition of "related to." The *Xonics* court stated that "related to" means "... it affects the amount of property available for distribution or the allocation of property among creditors." *Id.* The Tenth Circuit has defined "related to" as:

"The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted). Although the proceedings need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's

---

1. K & L also argues that if the third-party complaint was to be heard in federal district court, it should be in the Southern District of Florida where the bankruptcy proceedings are pending. K & L bases its argument on 28 U.S.C. § 1334(d) (1984) which provides that:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all property, wherever located, of the debtor as of commencement of such case, and of property of the estate.

Resurgens notes, however, that § 1334(b) provides, notwithstanding any act of Congress that specifically confers exclusive jurisdiction on a court other than district courts, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Therefore, if the malpractice action against K & L related to the chapter 11 proceedings, the district courts of the District of Colorado would be a proper forum.

rights, liabilities, options or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate. *Id.*

*Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990).

Resurgens acknowledges that the bankruptcy plan has been confirmed in the underlying action, but contends that the malpractice action is related because the award of a large judgment against Resurgens could result in "frustrating" the purpose of the bankruptcy. It explains that an award of a large judgment against it would affect the company's profitability, and the bankruptcy would be frustrated because stock was issued under the reorganization plan and Resurgens would no longer be profitable.

In a similar case, a court concluded that the federal court had jurisdiction over the chapter 11 debtor's legal malpractice counterclaim. *Murray, Hollander, Sullivan & Bass v. Hardwicke Companies, Inc. (In re Hardwicke),* 64 B.R. 113, 116 (S.D.N.Y. 1986). Hardwicke had presented a plan of reorganization ("Plan") that was confirmed by the creditors. *Id.* at 114. Pursuant to the Plan, unsecured creditors could elect to receive either cash or stock in a new corporation into which Hardwicke was to merge after bankruptcy. *Id.* After confirmation of the Plan, Hardwicke objected to the claim of the law firm for unpaid legal services and counterclaimed for legal malpractice. *Id.* The *Hardwicke* court reasoned that the counterclaim was "related to" the bankruptcy proceedings because if successful the claims would confer a major benefit on the debtor's estate, and the alleged malfeasance took place before the filing of the petition and was claimed to be one of the reasons that the debtor was forced into bankruptcy. *Id.* at 116–117. Therefore, the court concluded that "the potential benefit to Hardwicke's creditors who elected to receive stock in the reorganized company is such as to justify federal bankruptcy ... jurisdiction of this court." *Id.* at 117.

In *Hardwicke,* the court knew that ninety-seven percent of Hardwicke's unsecured creditors, who collectively held 99.4 percent

of Hardwicke's unsecured debt, had elected to become shareholders in the reorganized debtor. *Id.* at 116. In the case at bar, however, the court has no knowledge of what the actual impact of a possible distribution would be on creditors who opted to become shareholders. Moreover, the court reasoned that the alleged malfeasance giving rise to the counterclaims occurred before the filing of the petition in bankruptcy, and "indeed [was] claimed to be of the reasons that the debtor was forced into bankruptcy." *Id.* at 117. In the case at bar, the K & L firm did not represent Resurgens until its bankruptcy. *See Whiteford Plastics Co. v. Chase National Bank,* 179 F.2d 582, 584 (2d Cir.1950) (where creditors have received cash or stock for their claims there is no reason to safeguard their rights further); *Stallings v. Kellogg (In re Hudson Oil),* 68 B.R. 735, 741 (D.Kan.1986) (retaliatory discharge claim was "related to" bankruptcy where the estate may be liable for defendant's attorney's fees as an administrative expense and the defendant is trustee of the estate).

This court concludes that to allow nationwide service of process in this particular case would be too great an expansion of Rule 7004(d). Considering that there has been no showing of how many former creditors would be benefited by an award for Resurgens, and the fact that the plan of reorganization has been approved for over a year, the argument that this case is "related to" the bankruptcy estate is too tenuous for this court to accept.

II. *Is K & L Subject To Personal Jurisdiction Under Colorado's Long–Arm Statute?*

■ This court has subject matter jurisdiction based upon diversity jurisdiction under 28 U.S.C. § 1332. Therefore, an analysis of the traditional basis for personal jurisdiction is appropriate. A federal court may assert jurisdiction over a non-resident defendant pursuant to the long-arm statute of the state where it sits. Colorado's long-arm statute provides in the pertinent part:

(1) engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person ... to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

C.R.S. § 13–1–124 (1987).

The non-resident defendant must have minimum contacts with the forum state such that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A non-resident must purposefully avail himself of the laws of a forum state to an extent that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In applying Colorado law, courts have consistently distinguished between cases in which jurisdiction is based on a single isolated incident, and cases in which jurisdiction is predicated on allegations of continuous, substantial conduct in the forum state. *Miceli v. Stromer,* 675 F.Supp. 1559, 1561 (D.Colo.1987) (quoting *Behagen v. Amateur Basketball Ass'n of USA,* 744 F.2d 731, 734 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985)). The Tenth Circuit has labeled the former "specific" personal jurisdiction and the latter "general." *See Kennedy v. Freeman,* 919 F.2d 126, 128 n. 2 (10th Cir.1990) (specific jurisdiction arises when the defendant's minimum contacts give rise to a cause of action); *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988) (general jurisdiction arises from the defendant's continuous and systematic activity in the forum state). Resurgens claims that personal jurisdiction is established under both "specific" and "general" methods.

The Colorado Supreme Court has provided a test for specific personal jurisdiction:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425, 426 (1975).

K & L argues that none of the three prongs can be met in this case because K & L performed all legal services from its Miami office and could not anticipated being "haled" into court in Colorado. Furthermore, K & L argues that any damages that Resurgens may incur will accrue in Georgia where it is presently domiciled.

Resurgens responds that K & L undertook numerous activities which it knew would have serious effects in Colorado such as preparing a Registration Statement for the benefit of RAF and the individual plaintiffs, directing the mailing of numerous notices to Central's creditors and stockholders in Colorado, and preparing all the documents for Central's bankruptcy case. *See Kennedy v. Freeman,* 919 F.2d at 128 (defendant purposefully avails itself of the privilege of conducting activities within the forum state when it directs its foreign acts so as to have an effect in the forum state).

Resurgens claims the second prong of the *Van Schaack* test is met because the case pending against Resurgens to a large extent turns on the sufficiency of notice that was mailed to the Colorado creditors, namely RAF. K & L argues that the nature of the notices were merely "informational" and therefore insufficient to establish personal jurisdiction. *See Bennett Waites Corp. v. Piedmont Aviation, Inc.,* 563 F.Supp. 810, 812 (D.Colo.1983) (two telephone calls to Denver to give details about the place and conditions for the sale were merely informational and did not establish personal jurisdiction). The notifica-

tion to creditors and equity shareholders in the case at bar, however, was required to safeguard their constitutional right to protect a property interest. *See Reliable Electric Co., Inc. v. Olson Construction Co.*, 726 F.2d 620, 622–23 (10th Cir.1984) (discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment). Therefore, notices in this case were more than informational, and their adequacy is a pivotal issue.[2]

Resurgens contends the third prong of the test is met because K & L has significantly affected the legal rights of RAF and at least 150 other Colorado residents who were Central's creditors or equity security holders. *See Scheuer v. District Court of Denver*, 684 P.2d 249, 252 (Colo.1984) (the consequences of attorney's representation are sufficiently connected to Colorado to satisfy the substantial connection element of the test enunciated in *Van Schaack* when the substantial connection element of the test enunciated in *Van Schaack* when his out of state actions caused a mistaken disbursement of funds in Colorado).

Resurgens contends that the systematic and continuous contacts that K & L had with Colorado warrant exercise of general jurisdiction. Furthermore, defendant argues that K & L committed a tort within Colorado because the "negligent conduct in a foreign state which causes injury in Colorado may be deemed an act committed within Colorado for the purposes of the long-arm statute." *Scheuer v. District Court*, 684 P.2d at 251. Resurgens maintains that it is being forced to defend a suit in Colorado, and RAF and the individual plaintiffs are prosecuting this action, as a direct result of K & L's negligent actions.

K & L relies on the decision in *Beckman v. Carlson*, 553 F.Supp. 1049 (D.Colo.1983) for the proposition that there is no personal jurisdiction over K & L in Colorado. In that case, the plaintiffs had obtained a state court judgment in Colorado, and then learned that the judgment debtor owned real property in Montana. *Id.* at 1050. Plaintiffs retained the defendants, a Montana law firm, to execute the judgment in Montana. When the debtor sold her Montana property before the defendants acted to enforce the judgment, the plaintiffs brought a malpractice suit against the Montana attorneys. *Id.* The district court held that though the defendants' actions may have caused important consequences in Colorado, they did not have substantial contacts in Colorado. *Id.* at 1051. The limited facts provided in *Beckman*, however, do not indicate that the defendants had any contact with Colorado beyond the fact that they were hired by a Colorado client.

In *Waterval v. District Court of El Paso County*, 620 P.2d 5 (Colo.1980), *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981) the Colorado Supreme Court found that a Virginia attorney, who established his attorney client relationship with the plaintiff in Virginia, had sufficient contacts with Colorado for Colorado courts to have personal jurisdiction over him. The defendant made several phone calls to the plaintiff after she moved to Colorado, mailed a contract, performed some legal services in Virginia, and billed the plaintiff in Colorado. *Id.* at 7. The court noted that the case did not neatly fit into either the

---

**2.** K & L relies on *Southern Iowa Manufacturing Co. v. Whittaker Corp.*, 404 F.Supp. 630 (S.D. Iowa 1975) for the proposition that since RAF and K & L had no direct dealings, there is no personal jurisdiction over K & L. In *Whittaker*, SIMCO, an Iowa corporation, filed suit against Whittaker, a California corporation, to recover for allegedly defective steel products. Whittaker filed a third-party complaint against Chicago Steel and another company alleging that those companies delivered all the steel to SIMCO for Whittaker, and therefore if it was defective it was caused by their actions. *Id.* at 632. Chicago Steel moved to have the third-party com-

plaint dismissed for lack of personal jurisdiction. The court held the proper inquiry was Chicago Steel's contacts with SIMCO as well as Whittaker. Chicago Steel had in fact been contracting directly with SIMCO. *Id.* In the case at bar, while K & L were certainly not in contractual privity with RAF, they were responsible for notifying RAF of the bankruptcy proceedings. The lack of notification is a key issue in this case, and it is K & L that contracted for and directed the sending of the bankruptcy notices to all Colorado creditors and equity shareholders.

"single contact" or "continuous contact" category, but that the defendant's action within Colorado were not isolated, single events. *Id.* at 9. The court concluded that the exercise of jurisdiction comported with the idea of fair play and substantial justice. *Id.* at 11. *See also Jenner & Block v. District Court of Denver,* 197 Colo. 184, 590 P.2d 964, 966 (1979) (Illinois law firm was subjected to personal jurisdiction for allegedly coercing their Colorado client to sign a contract which affected the legal rights of parties concerning Colorado real estate). K & L argues that the above cases are distinguishable because they involve Colorado clients and injuries to Colorado residents in "stark" contrast to the case at bar. The case at bar, however, is analogous to *Waterval* and *Jenner & Block* in that the voluntary representation of Central mandated contact with Colorado residents, and the effects of K & L's alleged negligence affected the rights of both the defendant and the Colorado plaintiffs in the underlying action.[3] *See Id.* (court must assume pleadings are true).

In summary, a traditional sense of fair play and substantial justice allows that K & L be subjected to personal jurisdiction in Colorado. K & L was responsible for discharging the claims of RAF and the individual Colorado plaintiffs in bankruptcy, and undertook a variety of actions in Colorado to meet those ends. Whether the plaintiffs' claims have been discharged is to be determined in the case at bar. Since only by access to Colorado residents could K & L hope to discharge all claims against Central and effectuate its representation of Central in bankruptcy, it is fundamentally fair that K & L be subject to personal jurisdiction here. *See Brown v. Watson,* 207 Cal.App.3d 1306, 255 Cal.Rptr. 507, 513 (1989) (Texas law firm subject to personal jurisdiction in California for alleged malpractice for legal services it performed in

Texas in part because only access to information in California and contact with California residents allowed them to undertake representation). Although this is a close case on the facts, under the traditional minimum contacts analysis this court will assert personal jurisdiction over K & L.

III. *Has Resurgens Stated A Cause Of Action For Its State Law Claims?*

■ K & L contends that Florida has the most significant contacts with the alleged malpractice and therefore Florida law should control on the issues arising from the allegations of legal malpractice, breach of contract and negligent misrepresentation. Under Florida law, a cause of action for legal malpractice does not accrue until damages in the underlying action are fixed and the underlying action is finally concluded. *See Zakak v. Broida & Napier, P.A.,* 545 So.2d 380, 381 (Fla.Dist.Ct.App.1989) (cause of action for legal malpractice does not accrue until final judgment in underlying action is entered). The defendants argue that since Resurgens has alleged only possible or contingent negligence, those claims should be dismissed.

■ Resurgens responds that K & L is overlooking the purposes of F.R.C.P. 14(a). This court has stated:

The general purpose of Rule 14 is to settle related matters in one litigation as far as possible and obtain consistent results from identical or similar evidence, thus preventing a duplication of effort for the courts and serving the interests of judicial economy, convenience and fairness to the parties.

*Patten v. Knutzen,* 646 F.Supp. 427, 429 (D.Colo.1986).

To utilize Rule 14, the governing substantive law must recognize the right the party seeks to enforce. *Id.* Where there

**3.** Resurgens has shown that K & L directed that notices and other documents be mailed to Colorado equity shareholders on March 24, 1989, March 28, 1989, June 9, 1989, and June 12, 1989. K & L also negotiated a settlement for Central with an Englewood, Colorado attorney concerning a dispute involving a lease of real property located in Colorado. K & L directly mailed motions, applications, pleadings and notices concerning Central's bankruptcy case to Colorado equity holders and creditors. K & L had a number of communications by letter and telephone with RAF's Colorado counsel concerning the very issues of notice that underlie Resurgens' Third–Party Complaint.

is a basis for such a claim in the governing law, "Rule 14 expedites the presentation, and in some cases accelerates the accrual of such a right." *Id.* Florida law provides the substantive right to recover for legal malpractice. *See Dillard Smith Construction Co. v. Greene,* 337 So.2d 841, 843 (Fla.Dist.Ct.App.1976). Florida law also recognizes claims for both breach of contract and negligent misrepresentation. *See Industrial Medicine Publishing Co., Inc. v. Colonial Press of Miami, Inc.,* 181 So.2d 19 (Fla.Dist.Ct.App.1965) (breach of contract); *Atlantic National Bank of Florida v. Vest,* 480 So.2d 1328, 1331–32 (Fla.Dist. Ct.App.1985) (misrepresentation).

Rule 14(a) permits a third-party plaintiff to serve a third-party complaint upon a person who "is or *may be liable* to the third-party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." The words "may be liable" allow the defendant to join someone against whom a cause of action has not yet accrued. 6 Wright, Miller & Kane, *Federal Civil Procedure* § 1451 at 405–406 (2d ed. 1990).[4]

In Resurgens' first claim in the third-party complaint, it alleges that K & L was directly responsible for giving notice of the bankruptcy proceedings, and if K & L had fully discharged that duty the plaintiff would not have been able to bring suit against Resurgens. The Third Claim alleges that if the court should determine that the plaintiff's claims against Resurgens has not been discharged in bankruptcy, K & L will be liable for any damages sustained by Resurgens because it was the duty of K & L to insure that all such claims were discharged. The claims against K & L for legal malpractice are the type included under Rule 14(a) in that they are directly related to the underlying case, and in the interests of judicial economy the third-party complaint should stand. *See May's*

*Family Centers, Inc. v. Goodman's Inc.,* 104 F.R.D. 112, 116 (N.D.Ill.1985) (requiring defendant to duplicate proof needed to defend a breach of contract claim and sue on a third-party complaint of malpractice, would be a waste of judicial resources and create an unfair risk of inconsistent determinations). Likewise, as Florida law recognizes actions for negligent misrepresentation and breach of contract, Rule 14(a) allows the defendant to implead the third-party regardless if the claims have accrued.

The third-party defendant also claims that since the claim for negligent misrepresentation is founded on opinion rendered by K & L rather than a statement of fact, it will not support a claim for fraud and misrepresentation under Florida law. Resurgens has noted, however, that a statement is regarded as opinion concerning misrepresentation if the parties are on equal ground. *Atlantic National,* 480 So.2d at 1332 n. 3. If the party making the statement has superior or exclusive knowledge, such a statement is considered a statement of fact. *Id.* K & L had specialized knowledge concerning bankruptcy proceeding, and specific knowledge of the notices that were given in Central's bankruptcy proceedings. Therefore, the representations relating to Resurgens' claim of negligent misrepresentation were statements of fact.

Accordingly,

IT IS ORDERED that the third-party defendant's motion to dismiss is DENIED.

---

4. The law of Florida is identical with respect to Rule 14. *See Attorneys' Title Insurance Fund, Inc. v. Punta Gorda Isles, Inc.,* 547 So.2d 1250, 1251 (Fla.Dist.Crt.App.1989) (virtually all third party claims involve situations in which a cause of action does not technically exist at the time the third party complaint is filed); *Chappell v.* *Scarborough,* 224 So.2d 791, 796 (Fla.Dist.Crt. App.1969) (in third party practice the right of accrual is sometimes accelerated); *Mims Crane Service, Inc. v. Insley Mfg. Corp.,* 226 So.2d 836, 840 (Fla.Dist.Crt.App.1969) (may file third-party indemnity complaint without waiting for a final adjudication or payment).